**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| McCUE et al.,<br><br>            Plaintiffs,<br><br>     v.<br><br>SOUTH FORK UNION ELEMENTARY SCHOOL, et al.,<br><br>            Defendants. | 1:10-cv-00233-OWW-MJS<br><br>MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION TO DISMISS (Doc. 25). |

## I. INTRODUCTION.

Plaintiffs proceed with this civil rights action pursuant to 42 U.S.C. § 1983 against various Defendants. Plaintiffs filed a second amended complaint ("SAC") on June 21, 2010. (Doc. 22). Defendants filed a motion to dismiss the SAC on July 21, 2010. (Doc. 25). Plaintiffs filed opposition to the motion to dismiss on September 13, 2010. (Doc. 31). Defendants filed a reply on September 20, 2010. (Doc. 32).

## II. RELEVANT FACTUAL BACKGROUND.

Plaintiff P.M. was a student at South Fork Elementary School ("the School") at all times relevant to this action. Plaintiffs Lawrence and Darlene McCue are P.M.'s parents. Moving Defendants Shannon Damron, Sabine Mixion, Robin Shive, and Karen Zurin were teachers and administrators at the School all times relevant to

1

this action.

P.M. is allergic to nuts. Beginning in December, 2006, Darlene and Lawrence began requesting accommodations for P.M.'s nut allergy from the School. Specifically, the McCues requested that the school consider not serving all food containing any nut products. Ultimately, the only accommodation offered by the School for P.M.'s second-grade year was that P.M. could eat his lunch in the school office.

On February 28, 2008, the School held an event where all of the schools students were present on the play ground at one time. During this event, P.M. was served a cookie containing peanut butter. P.M. had an allergic reaction to the cookie and required medical treatment. Plaintiffs subsequently contacted the State Board of Education to report the February 28, 2008 incident. The State Board of Education reprimanded Defendants Shive, Damron, Zurin, Mixion, and the School District.

According to the complaint, Shive and Zurin retaliated against Plaintiffs by making knowingly false statements to doctors at Mattel Children's Hospital to encourage filing of a report with Child Protective Services.[1] P.M. was subsequently removed from the McCue's custody. The morning after P.M. was removed from the McCue's custody, Shive called Plaintiff an intimated that she had caused P.M.'s removal in order to retaliate against the McCue's for

---

[1] It is unclear whether the complaint alleges that Mixion and Damron made any false statements to doctors. Portions of the complaint allege that "District Defendants" made false statements, whereas other portions of the complaint specifically allege that Shive and Zurin made false statements to doctors. The complaint defines "District Defendants" to include the School itself, and thus, with the exception of the direct allegations pertaining to Shive and Zurin, the complaint is ambiguous as to who made false statements to doctors.

**2**

1 reporting the cookie incident to the State Board of Education.

2 On March 10, 2008, Damron, P.M.s teacher, told her entire
3 class that P.M. had been taken by Child Protective Services, would
4 not be returning to school, and was safe. Later that afternoon,
5 the McCue's began receiving phone calls from the parents of P.M.'s
6 classmates to inquire about P.M.

### III. **LEGAL STANDARD**.

8 Dismissal under Rule 12(b)(6) is appropriate where the
9 complaint lacks sufficient facts to support a cognizable legal
10 theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
11 (9th Cir.1990). To sufficiently state a claim to relief and
12 survive a 12(b)(6) motion, the pleading "does not need detailed
13 factual allegations" but the "[f]actual allegations must be enough
14 to raise a right to relief above the speculative level." *Bell Atl.*
15 *Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d
16 929 (2007). Mere "labels and conclusions" or a "formulaic
17 recitation of the elements of a cause of action will not do." *Id*.
18 Rather, there must be "enough facts to state a claim to relief that
19 is plausible on its face." *Id*. at 570. In other words, the
20 "complaint must contain sufficient factual matter, accepted as
21 true, to state a claim to relief that is plausible on its face."
22 *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173
23 L.Ed.2d 868 (2009) (internal quotation marks omitted).

24 The Ninth Circuit has summarized the governing standard, in
25 light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to
26 survive a motion to dismiss, the nonconclusory factual content, and
27 reasonable inferences from that content, must be plausibly
28 suggestive of a claim entitling the plaintiff to relief." *Moss v.*

**3**

*U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment, and it must give the nonmoving party an opportunity to respond." *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

**IV. <u>DISCUSSION</u>.**

**A. Plaintiff's Seventh Cause of Action**

Count three of Plaintiffs' seventh cause of action asserts a claim under 42 U.S.C. § 1983 against Defendant Shannon Damron

**4**

("Damron") under a "defamation-plus" theory.[2] A "defamation-plus" claim requires an allegation of injury to a plaintiff's reputation from defamation accompanied by an allegation of injury to a recognizable *property or liberty interest. E.g. Crowe v. County of San Diego*, 593 F.3d 841, 879 (9th Cir. 2010). There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a federally protected right; or (2) allege that the injury to reputation caused the denial of a federally protected right. *Id*. (quoting *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636, 645 (9th Cir. 1999).

Plaintiffs contend that the defamation-plus standard is satisfied because Damron's alleged defamatory statements where made in connection with a violation of Plaintiffs' federal constitutional right to petition the government under the First Amendment of the United States Constitution. (Opposition at 7-8). Specifically, Plaintiffs argue that Damron's statements where made in retaliation for the complaints Plaintiffs made against various Defendants. (Id.). Under the law of the Ninth Circuit, however, alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right is insufficient to state a defamation-plus claim. *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (citing *Paul v. Davis,* 424 U.S. 693 (1976) *and Patton v. County of Kings*, 857 F.2d 1379, 1381 (9th Cir. 1988)); *accord Sanders v. City &*

---

[2] The caption of this count identifies "District Defendants," however, only allegations pertaining to Damron are included. To the extent Plaintiffs seek to assert this cause of action against other Defendants, the complaint fails to give fair notice.

**5**

*County of San Francisco*, 226 Fed. Appx. 687, 690-91 (9th Cir. 2007) (unpublished); *Dube v. Dinshaw Contr.*, 359 Fed. Appx. 890, 891 (9th Cir. 2009) (unpublished).

Plaintiff also contends that Damron's statement was made in connection with a violation of Plaintiffs' right to privacy under the California constitution.[3] (Opposition at 8) (citing Cal. Const. Art. I and other California authorities). However, Plaintiff cites no authority that violation of a *state* constitutional right is sufficient to satisfy the defamation-plus standard. *Contra Nash-Holmes*, 169 F.3d at 645 ("There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was inflicted in connection with a *federally* protected right; or (2) allege that the injury to reputation caused the denial of a *federally* protected right") (emphasis added). Defendants' motion to dismiss Plaintiffs' defamation-plus claim under section 1983 is GRANTED, without prejudice.

**B. Plaintiffs' Eleventh Cause of Action**

Plaintiffs' eleventh cause of action is for violation of California Civil Code section 52.1.[4] Section 52.1 provides in part:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

---

[3] The complaint alleges that Damron's statement was made in connection with the unlawful seizure violation, however, Plaintiffs' opposition to the motion to dismiss does not articulate how the seizure violation is connected to Plaintiff's defamation-plus claim. In any event, the requisite nexus between the alleged defamation and seizure is lacking. *See Gini*, 40 F.3d at 1044 (complaint must allege that future constitutional deprivation was a reasonably foreseeable result of defamatory statement in order to state a claim).

[4] Plaintiffs abandon their claim under California Civil Code section 57.1. (Opposition at 10 n.1).

**6**

> coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages

Cal. Civ. Code § 52.1. The elements of a claim under section 52.1 are:

> (1) that the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) that the plaintiff reasonably believed that if she exercised her constitutional right, the defendant would commit violence against her or her property; that the defendant injured the plaintiff or her property to prevent her from exercising her right or retaliate against the plaintiff for having exercised her right; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

See *Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 882 (Cal. Ct. App. 2007)(citing CACI No. 3025). Section 52.1(j) provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat

Cal. Civ. Code § 52.1(j).

Plaintiffs' claim under section 52.1 is that Defendants retaliated against Plaintiffs for exercising their right to file complaints regarding the Defendants' conduct. (Opposition at 13).

**7**

The retaliatory acts Plaintiffs identify are the various "malicious statements" made by Defendants and Defendants' act of feeding P.M. a peanut butter cookie, causing him to have a severe allergic reaction. (Opposition at 11-12). None of the alleged malicious statements Plaintiffs complain of threatened violence against Plaintiffs. Accordingly, Plaintiffs fail to state a claim under section 52.1 based on Defendants' statements. Cal. Civ. Code § 52.1(j) (speech not actionable unless threats of violence are entailed).[5]

Plaintiffs' allegations regarding the peanut butter cookie served to P.M. are too vague and conclusory to state a claim under section 52.1. The SAC alleges:

> On February 28, 2008, South Fork Elementary School had an event to the middle school and elementary school children were all present on the play ground at once. During that event, South Fork Elementary school served peanut butter cookies to all of the students with full knowledge that P.M. was allergic to peanuts

(SAC at 8). The SAC fails to allege that P.M. was given the peanut butter cookie by a person with actual knowledge of P.M.'s allergy. The SAC's conclusory allegation that the school served the cookie to P.M. with "full knowledge" of his allergy is not supported by sufficient factual allegations as required by federal pleading standards. Although the SAC does establish that some school personnel where aware of P.M.'s allergy, the SAC does not allege

---

[5] At oral argument, Plaintiffs suggested that pursuant to *Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (Cal. 2004), a complaint states a cause of action under section 52.1 even where no threats of violence are alleged. *Venegas* does not support Plaintiffs' contention: "All we decide here is that, in pursuing relief for those constitutional violations under section 52.1, plaintiffs need not allege that defendants acted with discriminatory animus or intent, so long as those acts were accompanied by the requisite threats, intimidation, or coercion." 32 Cal. 4th at 843.

**8**

facts which permit the inference that any person with actual knowledge of P.M.'s allergy played a role in serving P.M. the cookie. Further, the SAC fails to allege that P.M. was given the peanut butter cookie in order to interfere with constitutional or statutory rights. Plaintiff's claim under section 52.1 is DISMISSED, with leave to amend, only if Plaintiff can allege a specific individual acted with the requisite intent.

**C. Plaintiff's Twelfth Cause of Action**

Plaintiff's twelfth cause of action asserts claims for intentional infliction of emotional distress against, among others, Defendants Shive, Damron, Zurin, and Mixon.

A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. *E.g. Hughes v. Pair*, 46 Cal. 4th 1035 , 1051 (Cal. 2009) (citations omitted). A defendant's conduct is "outrageous" when it is so extreme as to exceed all bounds of that usually tolerated in a civilized community, and the defendant's conduct must be intended to inflict injury or engaged in with the realization that injury will result. *Id*.

**1. Lawrence and Darlene McCue's Claim Against Defendant Shive**

The SAC alleges that Shive made knowingly false statements to doctors at Mattel Children's Hospital in order to encourage the them to file a report with Child Protective Services, with the intent to harm Plaintiffs. Defendants contend that the SAC fails

to allege extreme and outrageous conduct and fails to allege that Shrive directed her conduct at Lawrence McCue.

The SAC sufficiently alleges conduct by Shrive that is extreme and outrageous. Making a knowingly false report of child abuse in order to cause a CPS report against parents is unquestionably beyond the bounds of that usually tolerated in a civilized community if it evinces malice and the intent to cause a child to be removed from the child's parent. The SAC also sufficiently alleges that Shive's conduct was directed at Lawrence McCue. The SAC specifically alleges that Shive intended to harm Plaintiffs when making the false reports, (SAC at 52), and reasonable inferences derived from the facts alleged in the complaint support the notion that Shive directed her conduct at Lawrence McCue, (SAC at 2) (stating that Lawrence is P.M.'s adopted father). It is axiomatic that a child's parents will suffer severe emotional distress as a result of false allegations of child abuse against them and the depravation of their custodial rights.

Defendants contend that they are mandatory reporters under California Penal Code section 11164 et seq., and that their statements to doctors regarding potential abuse of P.M. were privileged. However, Defendants cite no authority which stands for the proposition that malicious and knowingly false statements are privileged as within any reporting duty. Defendants' motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress against Shive is DENIED.

**2. Lawrence and Darlene McCue's Claim Against Defendant Damron**

Plaintiffs claim for intentional infliction of emotional distress against Defendant Damron is based on Damron's statement to

**10**

students in her class that "P.M. had been taken away from his parents and put in a foster home and now he will be safe and he would not be coming back." (SAC at 13). Damron's alleged statement falls short of conduct that is so extreme as to exceed all bounds of that usually tolerated in a civilized community. Further, the SAC does not sufficiently allege that Damron's statement was directed at Plaintiffs. The link between Damron's statement and Plaintiffs injury is attenuated: in order for Damron to have directed her statement to Plaintiffs, Damron needed to intend or expect for her statement to be relayed to Plaintiffs; the SAC does not allege facts sufficient to permit such an inference. Finally, the SAC fails to articulate any cognizable theory regarding how Damron's alleged statement is connected to Plaintiffs vague allegation of conspiracy. Defendants' motion to dismiss Plaintiffs' claim for intentional infliction of emotional distress against Defendant Damron is GRANTED, without prejudice.

**3. Lawrence and Darlene McCue's Claim Against Zurin and Mixon**

Plaintiffs claim against Defendants Zurin and Mixion is predicated on Plaintiffs' allegation of conspiracy, as well as the allegation that Zurin made knowingly false statements to doctors at Mattel Children's Hospital. The SAC sufficiently alleges a claim for intentional infliction of emotional distress against Zurin based on Zurin's alleged act of making knowingly false statements in order to encourage filing of a false report with Child Protective Services. The SAC does not allege sufficient facts to state a claim for intentional infliction of emotional distress against Mixion, as there are no relevant factual allegations against Mixion. The SAC fails allege any specific conduct by

**11**

Mixion. Defendants' motion to dismiss is GRANTED as to Mixion, without prejudice, and DENIED as to Zurin.

### 4. Plaintiffs' Conspiracy Claim

Plaintiffs' fourth count is premised on an alleged conspiracy between Defendants Shive, Damron, Zurin, and Mixion. However, the SAC fails to give Defendants fair notice of the nature of Plaintiffs' conspiracy claim. The SAC provides:

> Defendants Damron, Zurin, and Mixion, each of them, participated in, conspired with, approved of, and/or aided and abetted the conduct of the remaining Defendant Shive. As an aspect of the conspiracy, and in furtherance of the objectives of the conspiracy, Defendant Damron made the disclosure [to her class that P.M. had been placed in a foster home]

(SAC at 56). The nature and object of the conspiracy alleged in the SAC is unclear. The SAC is ambiguous as to whether the object of the alleged conspiracy was the district's policy of refusing to provide reasonable accommodations to students with food allergies, the cookie incident, or retaliation for Plaintiffs complaint following the cookie incident. Accordingly, Plaintiffs' claim for intentional infliction of emotional distress based on an alleged conspiracy is impermissibly vague and must be dismissed, without prejudice.

**ORDER**

For the reasons stated, IT IS ORDERED:

1) Plaintiff's defamation-plus claim against Defendants Damron, Zurin, Shive, Mixion, and South Fork Union School District is DISMISSED, without prejudice;

2) Plaintiffs' claim under California Civil Code section 52.1 against Defendants Damron, Zurin, Shive, Mixion, and South Fork Union School District is DISMISSED, without prejudice;

**12**

3) Plaintiffs claims for intentional infliction of emotional distress against Defendants Damron, Mixion, and South Fork Union Elementary School are DISMISSED; without prejudice; and
4) Plaintiff shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk.  Plaintiff shall file an amended complaint within ten (10) days of the filing of the order. Defendant shall file a response within fifteen (15) days of receipt of the amended complaint.

IT IS SO ORDERED.

**Dated:    October 8, 2010**              **/s/ Oliver W. Wanger**
                                           UNITED STATES DISTRICT JUDGE