1
2
3
4
5

### UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

6
7

| | |
|---|---|
| **McCUE et al.,** | **1:10-cv-00233-OWW-MJS** |
| **Plaintiffs,** | **MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT (Doc. 25).** |
| **v.** | |
| **SOUTH FORK UNION ELEMENTARY SCHOOL, et al.,** | |
| **Defendants.** | |

14
15

### I. <u>INTRODUCTION</u>.

Plaintiffs proceed with this civil rights action pursuant to 42 U.S.C. § 1983 against various Defendants. Plaintiffs filed a third amended complaint ("TAC") on October 29, 2010. (Doc. 41). Defendants filed a motion to dismiss the TAC on November 12, 2010. (Doc. 42). Plaintiffs filed opposition to the motion to dismiss on January 17, 2011. (Doc. 47). Defendants filed a reply on January 24, 2011. (Doc. 48).

### II. <u>RELEVANT FACTUAL BACKGROUND</u>.

Plaintiff P.M. was a student at South Fork Elementary School ("the School") at all times relevant to this action. The School is part of the South Fork Union School District ("the District"). Plaintiffs Lawrence and Darlene McCue are P.M.'s parents ("the McCues"). Moving Defendants Shannon Damron, Sabine Mixion, Robin

1

Shive, and Karen Zurin were teachers and administrators at the School all times relevant to this action.

P.M. is allergic to nuts. On December 12, 2006, the McCues met with the School's Principal, Robin Shive ("Shive"), to request accommodations for P.M.'s nut allergy from the School.   Shive advised the McCues that the only accommodation the School could provide was for P.M. to sit at a nut free table in the cafeteria for lunch.  During the remainder of the 2006-2007 school year, there were several additional meetings between the McCues and the District in which the McCues requested that the School stop serving nuts or products containing nuts.  Shive repeatedly stated that neither the District nor the School would stop serving nuts. Plaintiffs contend the refusal to ban nuts and nut products from the District constituted a failure to make reasonable accommodation for P.M. as required by the Individuals with Disabilities Education Act.

At the beginning of the 2007-2008 school year, the McCues again met with Shive to request accommodations for P.M.   Shive advised the McCues that the School could no longer have a "nut free" table, but that P.M. could eat his lunch in the office to keep him safe.   The McCues were dissatisfied with Shive's proposition and continued to request further accommodation.[1]

On February 28, 2008, the School held an event at which all of the schools students were present on the play ground at one time. During this event, P.M. was served a cookie containing peanut

---

[1] Paragraphs 26-31, which span approximately two pages, contain allegations regarding P.M.'s health and medical treatment during the period from September 2007 through January 2008.   These allegations are immaterial to the instant motion to dismiss.

1   butter by "South Fork Elementary School."  The complaint does not
2   allege who gave P.M. the cookie.  P.M. had an allergic reaction to
3   the cookie and required medical treatment.  Plaintiffs subsequently
4   contacted the State Board of Education to report the February 28,
5   2008 incident.  The State Board of Education reprimanded Defendants
6   Shive, Damron, Zurin, Mixion, and the School District.

7        According to the complaint, Shive and Zurin retaliated against
8   Plaintiffs by refusing to make accommodations for P.M. and by
9   attempting to remove P.M. from the District.  Plaintiffs further
10  allege that Defendants engaged in conduct that they knew or should
11  have known would result in P.M. being wrongfully taken from the
12  McCues.  Plaintiffs allege that Defendants made knowingly false
13  statements to doctors at Mattel Children's Hospital to encourage
14  filing of a report with Child Protective Services.  Plaintiffs
15  further allege that Defendants had knowledge that the County had a
16  well established pattern, practice, and custom of violating
17  constitutional rights under the First, Fourth, and Fourteenth
18  Amendments of the United States Constitution.

19       After receiving a referral for potential child endangerment
20  from a doctor at Mattel Children's Hospital, the Kern County
21  Sheriff's Department initiated an investigation into P.M.'s medical
22  condition.  Before the investigation was complete, Child Protective
23  Services ("CPS") and James D. Stratton ("Stratton") made the
24  decision to remove P.M. from the McCue's parents.

25       On or about March 6, 2008, CPS, the Kern County Sheriff's
26  Department, and Stratton arrived at the School and removed P.M.,
27  without providing notice to the McCues. That evening, Stratton
28  informed the McCues that P.M. was removed from their custody

**3**

because "Darlene took too good a [sic] care of P.M. and was at the school with P.M. too much." (TAC at 11). No Defendant sought a warrant or court order authorizing P.M.'s removal.

After P.M.'s removal from the McCues' custody, P.M. was transferred out of the District to a school located in Bakersfield, California. Shive continued to disclose confidential information to Mattel Children's Hospital.

The morning after P.M. was removed from the McCue's custody, Shive called Plaintiff an intimated that she had caused P.M.'s removal in order to retaliate against the McCue's for reporting the cookie incident to the State Board of Education.

On March 10, 2008, Damron, P.M.s teacher, told her entire class that P.M. had been taken by Child Protective Services, would not be returning to school, and was safe. The McCue's began receiving letters from children and their families describing Damron's statements.[2]

### III. **LEGAL STANDARD**.

Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). To sufficiently state a claim to relief and survive a 12(b)(6) motion, the pleading "does not need detailed factual allegations" but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Mere "labels and conclusions" or a "formulaic

---

[2] The complaint includes additional allegations regarding events surrounding P.M.'s removal that are not relevant to the instant motion.

**4**

recitation of the elements of a cause of action will not do." *Id*. Rather, there must be "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. In other words, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted).

The Ninth Circuit has summarized the governing standard, in light of *Twombly* and *Iqbal*, as follows: "In sum, for a complaint to survive a motion to dismiss, the nonconclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir.2009) (internal quotation marks omitted). Apart from factual insufficiency, a complaint is also subject to dismissal under Rule 12(b)(6) where it lacks a cognizable legal theory, *Balistreri*, 901 F.2d at 699, or where the allegations on their face "show that relief is barred" for some legal reason, *Jones v. Bock*, 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

In deciding whether to grant a motion to dismiss, the court must accept as true all "well-pleaded factual allegations" in the pleading under attack. *Iqbal*, 129 S.Ct. at 1950. A court is not, however, "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for

1  summary judgment, and it must give the nonmoving party an
2  opportunity to respond." *United States v. Ritchie*, 342 F.3d 903,
3  907 (9th Cir. 2003). "A court may, however, consider certain
4  materials-documents attached to the complaint, documents
5  incorporated by reference in the complaint, or matters of judicial
6  notice-without converting the motion to dismiss into a motion for
7  summary judgment." *Id.* at 908.

### IV. <u>DISCUSSION</u>.

9       Defendants seek dismissal of count three of Plaintiff's
10 seventh cause of action and count one of Plaintiff's eleventh cause
11 of action.

**A. Plaintiffs' Seventh Cause of Action**

**1. Plaintiffs' Theory of Liability**

14      Count three of the TAC's seventh cause of action advances an
15 an unspecified claim under 42 U.S.C. § 1983 against Damron, Shive,
16 and Zurin.  The gravamen of Plaintiff's claim is that Damron,
17 Shive, and Zurin made false statements calculated to cause P.M. to
18 be removed from the McCues' custody.  Plaintiffs aver that they
19 have properly alleged section 1983 liability under *Gini v. Las*
20 *Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044-1045 (9th Cir. 1994).
21 (Doc. 47, Opposition at 2).

22      To properly allege that Damron, Shive, and Zurin set in motion
23 a series of acts that they reasonably knew would cause the
24 constitutional injury Plaintiffs complain of, Plaintiffs must
25 allege that Defendants knew or had reason to know that the relevant
26 actors would remove P.M. from the McCues' custody in violation of
27 due process. *See Gini,* 40 F.2d at 1044 ("because Mahony did not
28 terminate Gini's employment without due process, and did not know

**6**

1   and should not reasonably have known that her federal employer
2   would terminate her employment without due process, Gini has failed
3   to state a claim under § 1983."); *accord Crowe v. County of San*
4   *Diego*, 593 F.3d 841, 879 (9th Cir. 2010) (there are two ways to
5   state a cognizable constitutional claim based on defamatory
6   statements: (1) allege that the injury to reputation was inflicted
7   in connection with a federally protected right; or (2) allege that
8   the injury to reputation caused the denial of a federally protected
9   right) (citing *Herb Hallman Chevrolet v. Nash-Holmes*, 169 F.3d 636,
10  645 (9th Cir. 1999)).  Although the TAC alleges a constitutional
11  injury at the hands of the entities that removed P.M., it does not
12  properly allege that Defendants Damron, Shive, and Zurin had the
13  requisite knowledge to render their alleged defamatory statements
14  constitutionally violative.

15      **2. Alleged Constitutional Injury Relevant to P.M.'s Removal**[3]

16      Due process requires observance of procedural protections
17  before the state may interfere with the family relationship. *E.g.*
18  *Woodrum v. Woodward County*, 866 F.2d 1121, 1125 (9th Cir. 1989);
19  *Baker v. Racansky*, 887 F.2d 183, 187 (9th Cir. 1989); *Rogers v.*
20  *Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007).
21  However, the constitutional liberty interest in the maintenance of
22  the familial relationship is not absolute. *Woodrum*, 866 F.2d at

23

24      [3] The SAC attempted to advance a first amendment retaliation claim based
25  on the same facts alleged in count three of the TAC's seventh cause of action;
    this claim was dismissed for failure to state a claim. (Doc. 36, Memorandum
26  Decision at 5-6) (citing *Gini*, 40 F.3d 1045 other authorities for the proposition
    that alleging defamation by a public official in retaliation for the exercise of
27  a First Amendment right fails to state a claim under section 1983). To the extent
    Plaintiffs persist with their First Amendment retaliation claim in the TAC, it
28  is dismissed with prejudice for the reasons stated in the Memorandum Decision
    dismissing the SAC.

**7**

1125.  "The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." *Id.* (citations omitted).

Officials who remove a child from the home without a warrant must have reasonable cause to believe that the child is likely to experience serious bodily harm in the time that would be required to obtain a warrant. *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294 (9th Cir. 2007). Serious allegations of abuse that have been investigated and corroborated usually give rise to a "reasonable inference of imminent danger sufficient to justify taking children into temporary custody" if they might again be beaten or molested during the time it would take to get a warrant. *Id.* (citing *Ram v. Rubin*, 118 F.3d 1306, 1311 (9th Cir. 1997)).

Due process also prevents unwarranted interference with the familial relationship, regardless of what procedures are employed. *See, e.g., Crowe v. County of San Diego,* 608 F.3d 406*,* 441 n.23 (9th Cir. 2010) ("'unwarranted state interference' with the relationship between parent and child violates substantive due process") (citing *Smith v. City of Fontana*, 818 F.2d 1411, 1419-1420 (9th Cir. 1987) *overruled in part on other grounds by Hodgers-Durgin v. De La Vina*, 199 F.3d 1037, 1041 n.1 (9th Cir. 1999)).[4]   Interference with the familial relationship is "unwarranted" when it is effected for the purposes of oppression. *Fontana*, 818 F.2d at 1420 (citing *Daniels v. Williams*, 106 S. Ct. 662, 665 (1986) (substantive due process prevents use of

---

[4]  In *Crowe*, the Ninth Circuit cited *Fontana* as authority for the proposition that the substantive due process standard is "unwarranted interference," not the "shocks the conscience" standard.  608 F.2d at 441 n. 23.

governmental power for purposes of oppression regardless of the fairness of the procedures used)).

The allegations of the TAC suggest that Plaintiffs claim of constitutional injury is predicated on an alleged procedural due process violation.  (See TAC at 11) (alleging that no notice, hearing, warrant, or court order preceded P.M.'s removal).  To the extent Plaintiffs' claim is based on an alleged substantive due process violation, the TAC is deficient.  Mere negligence by state officials in the conduct of their duties resulting in temporary interference with familial rights does not trigger the substantive due process protections of the Fourteenth Amendment. *E.g. Woodrum*, 866 F.2d at 1126. As alleged, the removal of P.M. by the relevant actors did not constitute "unwarranted state interference" effected "for the purpose of oppression." No substantive due process claim is alleged.[5]  *Fontana*, 818 F.2d at 1420; *Crowe,* 608 F.3d at 441 n.23.

According to the TAC, P.M. was removed from the McCues' custody without a warrant in the absence of exigent circumstances or imminent danger of serious bodily injury.  (TAC at 11). Accepting these allegations as true, the TAC alleges a

---

[5]  Although the TAC is sufficient to allege that certain school administrators acted with oppressive intent, it does not allege facts sufficient to establish that the persons responsible for removing P.M. from the McCues' custody acted with oppressive intent. The TAC's conclusory allegation that CPS and the Sheriff's Department "acted with malice and with the intent to cause injury to P.M." is unsupported by any factual allegation sufficient to give rise to an inference that the actions of CPS and the Sheriff's Department were anything more than negligent, at worst. (See TAC at 18-23).  In order to properly state a derivative substantive due process claim against school administrators based on the theory of liability expressed in the TAC, Plaintiffs must allege facts sufficient to support an inference that the school administrators knew that the CPS and the Sheriff's Department would interfere with Plaintiffs' familial rights for oppressive purposes. *See, e.g., Gini*., 40 F.3d at 1044-1045.

1    constitutional injury based on the failure of the CPS and the

2  Sheriff's Department to comply with the procedural prerequisites to

3  removing a child from parental custody required by due process.

4  *See, e.g.*, *Rogers*, 487 F.3d at 1294 (reasonable cause to believe

5  that the child is likely to experience serious bodily harm required

6  in absence of a warrant).

7       **3. Allegations Regarding Defendants' Knowledge**

8       The TAC contains the conclusory allegations that CPS and the

9  Sheriff's Department had a well established pattern, practice, and

10  custom of effecting seizures not based on warrants or exigent

11  circumstances.  However, there are no facts alleged in the TAC to

12  support an inference that either CPS or the Sheriff's Department

13  had such a pattern, practice, and custom.  Similarly, although the

14  TAC alleges that Defendants were aware of the constitutionally

15  violative policies of CPS and the Sheriff's office because of their

16  past experiences with such agencies, (TAC at 35), there are no

17  facts alleged in the TAC to support Plaintiffs' conclusory

18  allegation regarding Defendants' knowledge.  For example, the TAC

19  does not allege that the school administrators had knowledge that

20  either CPS or the Sheriff's Department had removed a child without

21  complying with required procedures in the past.  Conclusory

22  statements unsupported by factual allegations are insufficient to

23  satisfy federal pleading standards.  *E.g. Iqbal*, 129 S.Ct. at 1949.

24       Count three of the seventh cause of action alleged in the TAC

25  is DISMISSED, without prejudice.  Plaintiffs will have one more

26  opportunity to properly allege this claim.

27  ///

28  ///

**10**

**B. Plaintiffs' Eleventh Cause of Action**

Count one of Plaintiffs' eleventh cause of action asserts a claim for violation of California Civil Code section 52.1 against the District and Shive.  Section 52.1 provides in part:

> If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state...Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages

Cal. Civ. Code § 52.1.  The elements of a claim under section 52.1 are:

> (1) that the defendant interfered with or attempted to interfere with the plaintiff's constitutional or statutory right by threatening or committing violent acts; (2) that the plaintiff reasonably believed that if she exercised her constitutional right, the defendant would commit violence against her or her property; that the defendant injured the plaintiff or her property to prevent her from exercising her right or retaliate against the plaintiff for having exercised her right; (3) that the plaintiff was harmed; and (4) that the defendant's conduct was a substantial factor in causing the plaintiff's harm.

*See Austin B. v. Escondido Union School Dist.,* 149 Cal. App. 4th 860, 882 (Cal. Ct. App. 2007)(citing CACI No. 3025).  Section 52.1(j) provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself threatens violence against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property

**11**

1         and that the person threatening violence had the apparent
2         ability to carry out the threat

3 Cal. Civ. Code § 52.1(j).

4      The TAC alleges that Shive threatened harm to P.M. by refusing
5 to keep him in a nut-free environment in order to discourage the
6 McCues from requesting accommodations for P.M.   The TAC also
7 alleges that Shive deliberately sought to increase P.M.'s risk of
8 exposure to peanut products.   Neither allegation is sufficient to
9 state a claim under section 52.1.

10      Serving a child a peanut butter cookie is not an inherently
11 violent act.  As Plaintiffs were advised in the Memorandum Decision
12 dismissing the SAC:

13         The SAC fails to allege that P.M. was given the peanut
         butter cookie by a person with actual knowledge of P.M.'s
14         allergy. The SAC's conclusory allegation that the school
         served the cookie to P.M. with "full knowledge" of his
15         allergy is not supported by sufficient factual
         allegations as required by federal pleading standards.
16         Although the SAC does establish that some school
         personnel where aware of P.M.'s allergy, the SAC does not
17         allege facts which permit the inference that any person
         with actual knowledge of P.M.'s allergy played a role in
18         serving P.M. the cookie.  Further, the SAC fails to
         allege that P.M. was given the peanut butter cookie in
19         order to interfere with constitutional or statutory
         rights.   Plaintiff's claim under section 52.1 is
20         DISMISSED, with leave to amend, only if Plaintiff can
         allege a specific individual acted with the requisite
21         intent.

22 (Doc. 36 at 8).  Plaintiffs TAC does not remedy the deficiencies
23 that required dismissal of the SAC's claim under section 52.1.  As
24 Plaintiffs have not alleged that any person gave P.M. the peanut
25 butter cookie with knowledge of P.M.'s nut allergy, the TAC does
26 not allege an act of violence against P.M.   Nor does the TAC
27 properly allege any threat of violence against P.M.
28 ///

For the purposes of the Bane Act, the term "threat" means "an 'expression of an intent to inflict evil, injury, or damage to another.'" *See In re M.S.*, 10 Cal. 4th 698, 710 (Cal. 1995) (discussing criminal counterpart to section 52.1, California Penal Code section 422.6). A threat is actionable under section 52.1 only if it would reasonably tend to produce fear in the victim. Cal. Civ. Code 52.1(j) ("...and the person or group of persons against whom the threat is directed *reasonably fears* that, because of the speech, violence will be committed"); *see also In re M.S.,* 10 Cal. 4th at 714. The TAC alleges that the following statements constituted threats of violence: (1) "Shive threatened harm to P.M. by refusing to keep him in a nut-free environment;" (2) "the McCues were told [by an unidentified school administrator] that there was nothing the District could do to protect [P.M. from exposure to nuts at school]." (TAC at 44-45). No reasonable person would perceive these statements as threats of violence against P.M. A refusal by school administrators to abolish all nut products from a school's campus is not the type of statement that would reasonably tend to produce fear of violence in an ordinary listener. Nothing in the TAC suggests that anyone ever threatened to intentionally expose P.M. to nuts or nut products. Plaintiffs' claim against the Shive, Damron, and Zurin for violation of section 52.1 is DISMISSED WITH PREJUDICE.

## **ORDER**

For the reasons stated, IT IS ORDERED:

1) Count three of the seventh cause of action alleged in the TAC under 42 U.S.C. § 1983 is DISMISSED, without prejudice;

2) Count one of the eleventh cause of action alleged in the

**13**

TAC under California Civil Code section 52.1 is DISMISSED, WITH PREJUDICE; and

3) Plaintiff shall lodge a formal order consistent with this decision within five (5) days following electronic service of this decision by the clerk.  Plaintiff shall file an amended complaint within ten (10) days of the filing of the order. Defendant shall file a response within fifteen (15) days of receipt of the amended complaint.

IT IS SO ORDERED.

**Dated:   February 7, 2011          /s/ Oliver W. Wanger**
UNITED STATES DISTRICT JUDGE