ROBERT R. POWELL, ESQ.   CSB# 159747
DENNIS R. INGOLS, ESQ.    CSB# 236458
BRETT O. TERRY, ESQ.       CSB# 270694
LAW OFFICES OF ROBERT R. POWELL
925 West Hedding Street
San Jose, California 95126
(408) 553-0200 Telephone
(408) 553-0203 Facsimile
E: rpowell@rrassociates.com


SHAWN A. MCMILLAN, ESQ.  CSB#208529
LAWRENCE D. DANER, ESQ. CSB#259689
THE LAW OFFICES OF SHAWN A.MCMILLAN, APC
4955 Via Lapiz
San Diego, California 92122
T: (858) 646-0069 F: (206) 600-4582
E: attyshawn@netscape.net

Attorneys for Plaintiffs

DISTRICT COURT FOR THE EASTERN DISTRICT CALIFORNIA
[BAKERSFIELD]

| | |
|---|---|
| DARLENE DARLENE MCCUE, et al., | Case No. 1:10-CV-00233- LJO-MJS |
| Plaintiffs, | DECLARATION OF ROBERT R. POWELL IN SUPPORT OF PETITION FOR MINOR'S COMPROMISE |
| vs. | |
| SOUTH FORK UNION SCHOOL DISTRICT, et al., | Hearing Date: 06/18/2012<br>Hearing Time: 8:30a.m.<br>Department: 4 |
| Defendants. | |

I, ROBERT R. POWELL, do hereby declare:

1. I am an attorney licensed to practice before all state and federal courts in the State of California, the Ninth Judicial Circuit, and the U.S. Supreme Court.  I am an attorney of record for all Plaintiffs herein.

1

2. I have e-mailed a copy of the accompanying Petition for Court Approval of Minor's Compromise of Claims, this Declaration, and all attachments, to all defense counsel. I expect that the Defendants' counsel will file Declarations of Non-Opposition.

3. Attached as Exhibit A is a true and correct copy of the Attachment to Petition for Minor's Compromise for each minor Plaintiff, redacted to protect the privacy of the minor Plaintiffs.

4. Attached as Exhibit B is a true and correct copy of the Non-Qualified Assignment and Release of Periodic Payment Obligation, redacted to protect the privacy of the minor Plaintiffs, that is to be signed by the Assignor ("County of Kern"), Assignee ("Barco Assignments Ltd."), Claimant (Minor Plaintiff by and through his mother and Guardian ad Litem, Darlene McCue"), and Claimant's Attorney.

5. Together, Exhibits A and B comprise the "Settlement Documents" pertaining to the settlement for which Plaintiffs seek approval of this Court.

6. As stated in the Petition, the attorneys' fees requested equal 50% of the net $337,146.67 monetary award to the minor Plaintiff P.M.

7. I respectfully submit to the Court this is an acceptable split of the settlement, and contingency fees in this case, and cases of this nature, for the following reasons:

8. Darlene McCue has, in her dual capacity as mother and Guardian Ad Litem for P.M. has been advised by counsel to seek outside tax advice that counsel expressly told her he was not qualified to give. Ms. McCue indicated she has done so, and feels that the single payment at 18 is in P.M.'s best interest.

9. The pre-attorney's fees proceeds to be received by P.M. is $337,146.67, versus $674,293.34, for Darlene & Lawrence. Given the greater emotional effect of the removal

2

and subsequent juvenile proceedings on Darlene & Lawrence than on P.M., who is young and has lesser understandings thereof, a larger present-value combined portion to Darlene & Lawrence collectively (though again, each Plaintiff individually will receive the same nominal amount upon execution of the settlement) is reasonable.

10. Also, given the higher projected tax consequences for Lawrence and Darlene, in after-tax dollars, it may very well prove that P.M. receives significantly more than Darlene & Lawrence combined.  This is especially likely given that the adult Plaintiffs report having incurred, or reasonably expecting to incur in the future, over $100,000 in expenses related to the wrongdoing complained of in this case, including but not limited to attorney and expert fees in the underlying juvenile dependency case, and therapy costs for all three Plaintiffs.

11. As to the distribution between the Plaintiffs collectively and Plaintiffs' counsel: the contingency case attorney fee percentage that my office charges for representation in these matters generally is based on over twenty years of combined experience practicing in this specific area of civil rights litigation.

12. The undersigned has been practicing for nearly 20 years.  This office is also responsible for two of the most significant cases in this area of law in the past five years, *Beltran v. County of Santa Clara*, and *Burke v. County of Alameda*, explained more fully below.

13. Mr. McMillan has been practicing for over eleven years, and is responsible for the single largest verdict ever awarded in a case of this nature in California, *Deanna Fogarty-Hardwick v. County of Orange, et al*. Case No. 01CC02379 (Declaration of Shawn McMillan, submitted herewith).

3

Declaration of Robert Powell Re:
Minors' Compromise
McCue v. South Fork, et al.
Case No. 1:10-CV-00233- LJO-MJS

14. The contingency requested in this case specifically is more than reasonable, given the results obtained, and the experience and efforts applied by my office and Mr. McMillan's office.

15. Also, as the Court is no doubt aware, there is a significant amount of risk that a law firm will never be paid any fees in the context of a civil rights case due to the elusive, shifting, and case-specific nature of immunity analysis.

16.  The possibility of having a case dismissed after thousands of dollars are expended on experts and discovery, and many attorney hours are spent litigating the case can mean significant financial losses to the attorney taking on such a case on a contingency basis.  In civil rights litigation, there is always the possibility that the court will find that indeed the Plaintiffs' rights were violated, but because the right was not "clearly established" the plaintiff will not recover a dime.  Another possible scenario involves a "winning" trial verdict, but for nominal damages, which could even be exceeded by costs incurred by the plaintiff, not to mention costs potentially taxed against the plaintiff who rejected an arbitration award, or outright lost a case.  The aforementioned are but a few of the possible risks associated with undertaking such a case on a contingency basis, and further justify the fees requested.

17. In a provision I suspect will not be found in any other contingency fee agreement anywhere, if I take a case to trial and we are awarded nominal damages, but an attorney fee award is made, my agreement specifies that the total net recovery will be added together and then split between the collective plaintiffs and counsel such that I never receive more (excluding cost reimbursement) than the plaintiffs collectively receive.

4

Declaration of Robert Powell Re:
Minors' Compromise
McCue v. South Fork, et al.
Case No. 1:10-CV-00233- LJO-MJS

18. I have represented plaintiff family members in civil rights cases of this nature over twenty times in the past thirteen years (handled in excess of one hundred juvenile court matters from which these cases usually stem), and I am currently representing plaintiff families in over a dozen other cases in three of the four District Courts in the State of California, and the 9th Circuit.

19. I have taken litigation of this nature to the 9th Circuit Court of Appeals several times.

20. In another recently decided appeal to the 9th Circuit by my office, *Beltran v. Santa Clara*, (WL 193319, en banc, per curiam, Jan. 24, 2008), the 9th Circuit, sitting *en banc*, reversed and remanded *Beltran*, and overruled itself on the issue of absolute immunity in *Doe v. Lebbos,* 348 F.3d 820 (9th Cir. 2003), for false presentation of facts, and the failure to disclose exculpatory facts in applications for protective custody warrants.

21. In addition, this office handled the matter of *Burke v. County of Alameda*, 586 F.3d 725 (9th Cir. 2009), which made it incumbent upon investigating police officers or social workers, to make all reasonable efforts to contact the "other" (i.e. non-offending) parent in child abuse investigations before electing to take a child into protective custody. All of these cases are significant for their expansion and/or clarification of parents' rights to care for their children without unnecessary government interference.

22. My office also prevailed in the case of *Fredenburg v. County of Santa Clara, et al.*, 407 Fed.Appx. 114, C.A.9 (Cal.),2010, which reaffirmed *Wallis v. Spencer*'s holding that a child cannot be separated from a parent based solely on the conduct of the other parent.

23. Another significant appellate victory for my office came in Anderson-Francois v. County of Sonoma, 415 Fed.Appx. 6, C.A.9 (Cal.),2011, which denied the defense of collateral estoppel based on rulings of the juvenile court.

5

24. To my knowledge, there are only eight attorneys in the State of California who practice in this area of civil rights law on a regular basis. Other than myself and my associate Dennis Ingols, and co-counsel Shawn McMillan, there are three from the San Diego area (Donnie Cox, Paul Leehey, Dennis Atchley), and one in the Bay Area (David Beauvais). Another fine attorney who is no longer doing these types of matters regularly, but who has done them in the past and been a personal mentor to me is Andrea Miller. We are in fact all confidants and colleagues, and somewhat regularly discuss and share developments in the law in this field.

25. In short, my office works very hard for the vindication of those parents and children whose lives have been so damaged by the often rash and inexplicable actions of tearing them apart, and we take these cases knowing the risks, and fully informing our clients of the same, as well as advising them of their ability to seek out other counsel if they would like.

26. I had no prior relationship, personal or professional, to Darlene, Lawrence, or P.M. prior to representing them in this case.

27. Plaintiffs Darlene and Lawrence, individually, and Darlene in the capacity of guardian ad litem for minor P.M.., freely and voluntarily entered into an arm's-length attorney-client contract with my firm, with the provision that the minor Plaintiffs' fee agreement with counsel was subject to approval by the Court through a Petition for Minor's Compromise.

28. Further, In answer to Plaintiffs' Complaint all Defendants denied liability, and County Defendants made claims of absolute and qualified immunity.

29. As a result of Defendants' denial of liability and claims of immunity, Plaintiffs' counsel diligently pursued discovery and preparation for motions and trial in this action, including by:

6

   a. Obtaining the required Order to obtain and use the confidential Juvenile Case file including transcripts of proceedings in the Juvenile Court through Welfare and Institution Code Section 827.

   b. Obtaining and reviewing voluminous medical records related to P.M..'s condition;.

   c. Propounding demands for case related production and policy, practice and procedure documents and records;

   d. Taking depositions including, the Plaintiffs, Defendants, and non-party witnesses, totaling 29 depositions;

   e. Plaintiffs also propounded and responded to Defendants discovery including:

   f. Extensive written discovery, subpoenas and demand for documents.

30. It was only after the completion of the aforementioned discovery that discussions were held on settlement.

31. For the foregoing reasons, I submit the attorneys' fees and costs award requested herein is entirely fair.

32. I believe the settlement distribution that is proposed properly takes into account various factors pertinent to discerning a reasonable distribution, as discussed in the Petition and herein, that the 50% contingency fee percentage is appropriate in this matter, and request this Court approve the Minor's Compromise as stated, without a hearing.

33. The foregoing is sworn to under penalty of perjury pursuant to the laws of the State of California

May 18, 2012                                /s/      Robert R. Powell
                                         ROBERT R. POWELL, ESQ.
                                         Attorney for Plaintiffs

Declaration of Robert Powell Re:
Minors' Compromise
McCue v. South Fork, et al.
Case No. 1:10-CV-00233- LJO-MJS

EXHIBIT A

## ATTACHMENT TO PETITION
## FOR MINOR'S COMPROMISE
## FOR:
## P.M. – DOB: ▇▇/2000

**Payments**
In consideration of the Petition for Minor's Compromise, attached hereto, County of Kern (the "Defendant"), agrees to settle this claim for P.M., a minor, by and through his Natural Parent and Guardian ad Litem, Gracie McCue, (the "Plaintiff").

Periodic Payments made payable to P.M. (the "Payee") according to the schedule as follows (the "Periodic Payments"):

**Guaranteed Lump Sum Payment**                                                   **Guaranteed Payout**

| Age | Amount | Payment Date |
|---|---|---|
| 18 | $182,000 | ▇▇/2018 |

$182,000

*The exact cost of the Periodic Payments is $166,906.67.*

*Funding delays and/or rate adjustments may result in minor changes to the benefits listed above. Such changes will be correctly reflected in the associated Release document.*

**Payee's Rights to Payments**
The Plaintiff acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee and no part of the payments called for herein nor any assets of the Defendant is to be subject to execution or legal process for any obligation in any manner, nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber, or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise.

**Consent to Non-Qualified Assignment**[1]
The Plaintiff acknowledges and agrees that the Defendant may enter into a Non-Qualified Assignment with Barco Assignments Ltd. ("Assignee") to make the Periodic Payments set forth herein. Specifically, the County of Kern (the "Assignor"), as the payor of the consideration for the Periodic Payments recited herein, shall purchase the above Periodic Payments and assign its obligation by signing a Non-Qualified Assignment document to make the Periodic Payments called for above in this Attachment to Petition for Minor's Compromise. The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Defendant (whether by judgment or agreement) immediately preceding the transfer of the Periodic Payments obligation. Liberty Life Assurance Company of Boston will distribute a Notice of Financial Commitment to BARCO Assignments Ltd. with the contract. Liberty Life Assurance Company of Boston has received high ratings from A. M. Best, (A), and Standard & Poor's, (A-) **(See attached ratings sheet).**

Such assignment shall be accepted by the Plaintiff without right of rejection and shall completely release and discharge the Defendant from the Periodic Payments obligation assigned to the Assignee. The Plaintiff recognizes that the Assignee shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the Defendant shall thereupon become final, irrevocable, absolute, and non-contingent. The Plaintiff agrees that such assignment shall constitute a full release and discharge of all of the Defendant's obligations relative to the Periodic Payments set forth above.

**Right to Purchase an Annuity**
The Defendant, itself, or through its Assignee, reserves the right to fund the liability to make the Periodic Payments by purchasing an annuity policy from Liberty Life Assurance Company of Boston. The Assignee shall be the sole owner of the annuity policy and shall have all rights of ownership. The Assignee may have Liberty Life Assurance Company of Boston mail payments directly to the Payee. The Plaintiff shall be responsible for maintaining the accuracy of the current mailing address and mortality information for the Payee with the Assignee.

**Non-Assignment**
None of the Periodic Payments and no rights to or interest in any of the Periodic Payments (all of the foregoing being hereinafter collectively referred to as "Payment Rights") can be
  i.   Accelerated, deferred, increased or decreased by any recipient of any of the Periodic Payments; or
  ii.  Sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a "Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.
  iii. No Plaintiff or Successor Payee shall have the power to effect any Transfer of Payment Rights except as provided in sub-paragraph (ii) above, and any other purported Transfer of Payment Rights shall be wholly void. If Payment Rights under this Agreement become the subject of a Transfer approved in accordance with sub-paragraph (ii) above, the rights of any direct or indirect transferee of such Transfer shall be subject to the terms of this Agreement and any defense or claim in recoupment arising hereunder.

**Payee's Beneficiary**
Any payments to be made after the death of the Payee pursuant to the terms of this Attachment to Petition for Minor's Compromise shall be made to such person or entity as shall be designated in writing by the Payee, upon reaching the age of majority, to the Assignee. If no person or entity is so designated by the Payee, or if the person designated is not living at the time of the Payee's death, such payments shall be made to the estate of the Payee. No such designation, nor any revocation thereof, shall be effective unless it is in writing and delivered to the Assignee. The designation must be in a form acceptable to the Assignee before such payments are made.

**Discharge of Obligation**
The obligation the Assignee to make each Periodic Payment shall be discharged upon the mailing of a valid check to the designated address or upon electronic transfer into the designated bank account in the amount of such payment to the Payee named in this Attachment to Petition for Minor's Compromise. Upon notice from the Payee that a payment was not received, the Assignee will initiate reasonable stop payment action and upon confirmation that the funds were not negotiated or deposited, Assignee will process a replacement payment.

---

[1] This process involves the herein referenced Defendant issuing a check payable to Barco Assignments Ltd. and signing a Non-Qualified Assignment and Release document to transfer their obligation for these payments to the Assignee.

## List of Company Ratings

**Company:** Liberty Life Assur of Boston
**Domicile:** NH
**Established:** 1963

**A.M. Best Company Rating**

Excellent. Assigned to companies that have, in our opinion, an excellent ability to meet their ongoing obligations to policyholders.

**Standard & Poor's Financial Strength Rating**

An insurer rated 'A' has STRONG financial security characteristics, but is somewhat more likely to be affected by adverse business conditions than are insurers with higher ratings.

**Comdex Ranking - VitalSigns Composite Index**

The Comdex gives the average percentile ranking of this company in relation to all other companies that have been rated by the rating services. The Comdex Ranking is the percentage of companies that are rated lower than this company.

---

A Best's Financial Strength Rating opinion addresses the relative ability of an insurer to meet its ongoing insurance obligations. It is not a warranty of a company's financial strength and ability to meet its obligations to policyholders. View our Important Notice: Best's Credit Ratings for a disclaimer notice and complete details at http://www.ambest.com/ratings/notice.

Watch list identifiers follow the ratings if the company is on the rating service's watch list. The identifier indicates a possible upgrade (w+), downgrade (w-), or unknown change (w).

The ratings on this report are current as of May 15, 2012. These ratings have been selected by your life insurance advisor from among the ratings assigned to this insurer.
Presented by: J. Douglas Merritt, Ringler Associates, Inc., 1981 N. Broadway, Suite 440, Walnut Creek, CA 94596 Phone: 8003521912 Email: jmerritt@ringlerassociates.com

EXHIBIT B

# Non-Qualified Assignment and Release of Periodic Payment Obligation

"Claimant"         P███ M███

"Assignor"         County of Kern

"Assignee"         Barco Assignments Ltd.

"Annuity Issuer"   Liberty Life Assurance Company of Boston

"Effective Date"

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A.  Claimant has executed a settlement agreement or release dated _____, 2012 (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B.  The parties desire to effect an assignment of Assignor's periodic payment liabilities to Assignee.

NOW, THEREFORE, in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1.  The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2.  The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

3.  The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

4.  This Agreement shall be governed by and interpreted in accordance with the laws of California.

5.  The Assignee may fund the Periodic Payments by purchasing an annuity contract or funding agreement issued by the Annuity Issuer. All rights of ownership and control of such annuity contract or funding agreement shall be and remain vested in the Assignee exclusively.

6.  The Assignee may have the Annuity Issuer send payment under any annuity contract or funding agreement purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the annuity contract, funding agreement or against the Annuity Issuer.

7.  Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

8.  In the event that the Settlement Agreement is declared terminated by a court of law this Agreement shall terminate. The Assignee shall then assign ownership of any annuity contract or funding agreement purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

9.  This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

10. Claimant hereby accepts Assignee's assumption of all liability for the Periodic Payments and hereby releases Assignor from all liability for the Periodic Payments.

Assignor: <u>County of Kern</u>

By: _____
      Authorized Representative

Title _____

Assignee: <u>Barco Assignments Ltd.</u>

By: _____
      Authorized Representative

Title _____

Claimants: _____
P████ M████, a minor, by and through his Natural Parent and Guardian ad Litem, Gracie McCue

Approved as to Form and Content:

_____
      Claimant's Attorney

# Addendum No. 1
# Description of Periodic Payments
### For:

## Preston McCue – DOB: ██/2000

*Payable to Preston McCue:*
**Guaranteed Lump Sum Payment**

| <u>Age</u> | <u>Amount</u> | <u>Payment Date</u> |
|---|---|---|
| 18 | $182,000 | ██/2018 |

**Initials**

Assignor_____

Claimant_____

Assignee_____