1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GRACIE DARLENE MCCUE, et al., | ) | 1:10-cv-00233-LJO-MJS |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER ON PETITION FOR MINOR'S |
| | ) | COMPROMISE |
| | ) | |
| SOUTH FORK UNION SCHOOL | ) | |
| DISTRICT, et. al., | ) | (ECF No. 97 & 100) |
| | ) | |
| Defendants. | ) | |

## I.   **INTRODUCTION**

Plaintiff, Gracie Darlene McCue, as Guardian Ad Litem for her minor child, P.M., initiated this action on behalf of herself and the minor child  along with her husband and co-plaintiff, Lawrence McCue.  Plaintiffs had initiated the action to recover for what they contended was the wrongful removal of the minor child from his parents' home and his mistreatment while in foster care. The Plaintiffs have now reached an agreement to settle with various Defendants, and they seek this Court's approval of the proposed settlement of the minor's claims.

The original Ex-Parte Petition for Minor's Compromise was filed in this Court May 18, 2012. (ECF No. 97.)  It was accompanied by a request that it be approved promptly without hearing so as to enable the purchase of an annuity, the option for which was guaranteed only

1 through July 1, 2012.

2      On review, the Court found the Petition to be inadequate and lacking in the most
3 fundamental of information needed to enable the Court to evaluate it and the proposed
4 settlement.  Plaintiff's counsel was so advised in a Court-initiated hearing May 30, 2012, and
5 was given leave to supplement the Petition.  An Amended Petition was submitted June 12,
6 2012, with additional information contained in counsels' supplemental declarations and related
7 papers. (ECF No. 100.)

8      No one has filed or voiced any opposition to the proposed settlement.

9      Based upon all information on file in this case, the Court conditionally grants the petition
10 in part for the reasons and in the manner set out below.

11 **II.    BACKGROUND**

12      This case arises from the alleged removal by Kern County Child Protective Services of
13 the then seven year old (apparently now ten) child from his parents' home without a warrant
14 and in the absence of exigent circumstances justifying the warrantless removal.  The minor
15 Plaintiff and his parents initiated the action against the South Fork Union School District and
16 four of its employees, Kern County and five of its agents and employees, and the foster
17 parents with whom the minor had been placed temporarily.  The facts, circumstances and
18 competing claims are, of course, much more detailed and complex, but the above one
19 sentence summary is sufficient for consideration of this Petition. (As counsel points out in the
20 Petition, a comprehensive summary of the facts, claims and defenses appears in the parties'
21 Joint Initial Scheduling Statement (ECF No. 71) as well as in various other pleadings and
22 motions on file.  No productive purpose would be served by reciting the same in detail here.)

23      All Plaintiffs were represented by the same counsel. Ultimately, they negotiated a
24 settlement under which Kern County is to pay the sum of $1 million, the foster parents to pay
25 the sum of $10,000 and the school district Defendants to pay the sum of $35,000, for a grand
26 total of $1,045,000, to settle all claims in or related to this action against all parties.  Plaintiffs
27 have agreed to divide the net settlement, after payment of costs, equally among the three of
28 them with the minor Plaintiff's one-third share being used to purchase an annuity payable to

U.S. District Court
E. D. California

1    him after he reaches majority.

2        The proposed settlement with the minor Plaintiff is before the Court for review at this

3    time.

4    **III.     APPLICABLE LAW**

5        Federal Rules of Civil Procedure, Rule 17, authorizes a guardian ad litem to bring suit

6    on behalf of a minor.  Plaintiff, Darlene McCue was appointed guardian ad litem on behalf of

7    the minor Plaintiff under state law (ECF No. 56, para. 1.) and charged with the fiduciary duty

8    of protecting his rights in this action. Fed. R. Civ. P. 17; Garrick v. Weaver, 888 F.2d. 687, 693

9    (10th Cir. 1989).

10        Local Rule 202 (b), Eastern District of California, prohibits settlement of a minor's claim

11    without an order of the Court approving the settlement.

12        Under L.R. 202 (b) (2), a motion for approval of a proposed settlement is to be filed and

13    calendared pursuant to L.R. 230.  The motion must disclose the age and sex of the minor, the

14    nature of the causes of action to be settled, the facts and circumstances out of which the

15    causes of action arose, the manner in which the compromise amount was determined and

16    such other information as will enable the Court to determine the fairness of the settlement and,

17    if a personal injury claim, the nature and extent of the injury, with sufficient particularity to

18    inform the Court as to whether injury is temporary or permanent.  Physician reports are to be

19    provided to the Court if they exist; otherwise they may be ordered by the Court.

20        L.R. 202 (e) provides that monies recovered for the minor are to be "disbursed pursuant

21    to such other order as the Court deems proper for the protection of the minor."

22        "'District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c),

23    to safeguard the interests of litigants who are minors.' Robidoux v. Rosengren, 638 F.3d

24    1177, 1181 (9th Cir. 2011).  'In the context of proposed settlements of suits involving minor

25    plaintiffs, this special duty requires a district court to conduct its own inquiry to determine

26    whether the settlement serves the best interests of the minor.' Id. (internal quotation marks

27    omitted). However, 'district courts [must] limit the scope of their review to the question whether

28    the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in

light of the facts of the case, the minor's specific claim, and recovery in similar cases.' Id. at 1181–82. 'So long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties.' Id. at 1182." Dumas v. City of Elk Grove, 2012 WL 2116390 (E.D. Cal. June 6, 2012). Robidoux expressly declined to describe the proper approach when approving a settlement arising under state law, but Doe ex rel. Scott v. Gill, 2012 WL 1939612 (N.D. Cal. May 29, 2012) concluded that Robidoux applied to minor's federal and state law claims.

"Federal courts generally require that claims by minors . . . be settled in accordance with applicable state law. California law requires *court approval* of the fairness and terms of the settlement." Schwarzer, Tashima & Wagstaffe, California Practice Guide, Federal Procedure Before Trial (2012) Pretrial Conference and Settlement Procedures, para. 15:138, p. 15-48 (emphasis in original). A settlement for a minor and attorney fees to represent a minor must be approved by the court. Cal. Prob. Code., § 3601; Cal. Fam. Code, § 6602. Reasonable expenses and court costs to be paid out of the settlement also must be approved by the court. Cal. Prob. Code, § 3601. It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors, subject to a showing of good cause to exceed that rate.. Walden v. Moffett, 2007 WL 2859790 at *3 (E.D. Cal. September 26, 2007); Schwall v. Meadow Wood Apartments, 2008 WL 552432 at *1 (E.D. Cal. .February 27, 2008); Red v. Merced County, 2008 WL 1849796 at *2 (E.D. Cal. April 23, 2008); Welch v. County of Sacramento, 2008 WL 3285412 at *1 (E.D. Cal. August 5, 2008).

## IV.    THE PETITIONS

Plainitff's initial petition for approval of minor's compromise set out a summary of the facts and proposed settlement similar to that outlined above and advised that the settlement, if approved, would result in a distribution for the benefit of the minor along the following lines: the minor's one-third share of the balance of the $1,045,000 settlement remaining after payment of $33,559.99 in costs incurred on behalf of the Plainitffs collectively (i.e.,

1  $337,146.67) would be distributed one-half to the minor's attorneys for fees and the

2  remainder, $168,573.34, would be used to purchase a single premium deferred annuity in

3  accordance with California Probate Code § 3600 et seq. The annuity was  to be purchased

4  from Liberty Life Assurance Company of Boston which is rated "A" by A.M. Best  and  "A-" by

5  Standard & Poor's.  (Best explains that its "A" rating means the company is considered to have

6  an "excellent" ability to meet its ongoing obligations to policyholders and "STRONG" financial

7  security characteristics, but "somewhat more likely to be affected by adverse business

8  conditions than insurers with higher ratings." (ECF No. 97, p.13.)  The annuity proposed was

9  to be structured so that the full principal and all accumulated interest would be payed out to

10 the minor in one lump sum of $182,000 on his eighteenth birthday.

11      Plaintiff's counsel accompanied the Petition with declarations and documents

12 confirming the foregoing, explaining why prompt approval was appropriate (to preserve a

13 locked-in annuity rate), and including declarations describing at some length counsels' unique

14 background and skills in this area of the law so as to justify approval of a settlement which

15 called for 50% of the minor's net settlement to be paid as attorney fees. The only other

16 information relating to the propriety of the proposed settlement for the benefit of the minor may

17 be summarized as follows: The one time, lump sum payment to the minor at age 18 was

18 designed "with the hope of providing the minor Plaintiffs (*sic*) with money at age 18, which will

19 presumably be the start of his college years, to assist with college expenses." (A footnote was

20 indicated at the end of the sentence, but there was no corresponding footnote.)   Noting that

21 the distribution to the minor might seem small compared to that to the parents, Plaintiff pointed

22 out that the minor's "reputations (*sic*) in the community were not soiled as were his parents'.

23 [He] was not made to suffer the indignation (*sic*) of being called child abusers, as were his

24 parents.  And so on." The Petition notes that all past and future costs for juvenile court

25 attorneys and therapy for the three Plaintiffs, in excess of $100,000, were paid by the parents

26 so that if the settlement is approved the minor would end up with more money, net of taxes

27 and expenses, than either of his parents.  It also notes that the parents will use their share of

28 money on things of benefit to the minor (e.g., "family vacations, new bicycles, shiny baubles").

1  It reports that the minor appears to have fully recovered from emotional damage, "though

2  some lingering fear or mistrust of authority figures may remain."

3      That is pretty much the sum total of all information provided to the Court along with the

4  request that the Petition be quickly approved *ex parte*.  As the Court pointed out on May 30,

5  this was far from enough to enable the Court to evaluate, much less approve, the proposed

6  settlement.

7      No medical records or reports or other information describing the minor's injuries-past,

8  present, or future-were provided.  Other than surmising that a minor might well be traumatized

9  by removal from his home and placement in foster care, it would have been impossible for the

10 Court to appreciate and evaluate the extent of his damages and the proposal for

11 compensating for them.

12     The Petition did not specify the age or sex of the child as required by L.R. 202.

13     The Court was able to dig through the filings and determine the child's approximate age

14 from other documents and also gain some insight from the pleadings (which are unsworn) as

15 to the alleged effect of the removal on the child.

16     Little information was provided as to how the proposed 50% attorney fee provision

17 related to the amount of time or effort the attorneys spent on the case.  Nothing was said

18 about who proposed the one third allocation of the settlement to each of  the three Plaintiffs,

19 how it was arrived at and whether anyone advocated on behalf of the minor or, except as

20 described above, even how the total settlement was determined.  Although suggesting that

21 the parents would be paying all of the minor's expenses prior to majority without having to

22 invade his share of the settlement, no such provision was included in the terms of settlement.

23 Counsel generously advised the Court that it could so order if it wanted.

24     There was no explanation for the highly unusual, and to most minds, ill-advised,

25 proposal to pay the entire amount of the settlement to the minor on his eighteenth birthday.[1]

26 _____

27     [1] Such lump sum payments generally are thought unwise based upon the belief that most recipients
immediately squander their new-found riches. Some have questioned the basis for those beliefs. See Laura J.

28 Koenig, Lies, Damned Lies, and Statistics? Structured Settlements, Factoring, and the Federal Government, 82
Ind. L.J. 809 (2007); Jeremy Babener, Justifying the Structured Settlement Tax Subsidy: The Use of Lump Sum

1   After the Court expressed some of its concerns, Plaintiffs' counsel filed the Amended

2   Petition, supplemental declarations, and related papers on June 12, 2012. (ECF No. 100.) The

3   Court evaluates the Amended Petition and the propriety of the proposed settlement of the

4   minor's claims based upon its review and analysis of the original Petition, the Amended

5   Petition, all papers filed in connection with both Petitions, and all pleadings and papers on file

6   in this action.

7   **V.    ANALYSIS**

8       **A.    The Settlement and Its Allocation**

9   As noted, the proposed settlement calls for specific Defendants to pay a total payment

10   of $1,045,000 to the three Plaintiffs.  A settlement in excess of $1 million is substantial by most

11   standards and seems quite reasonable given the nature of the alleged wrongs and injuries

12   described here.  It also seems consistent with the range of settlements in other cases in which

13   the Court has been involved or otherwise aware.  Significantly, the settlement was negotiated

14   after more than two years of litigation and completion of extensive discovery.   It was

15   negotiated by very experienced attorneys against very experienced attorneys.   Plaintiffs'

16   counsel were duty bound and well-motivated to seek the best possible resolution for their

17   clients and hence themselves.  It must be assumed that they, on consultation with their clients,

18   concluded the Defendants would not pay more without further litigation and that further

19   litigation was not risk- or cost-effective or otherwise in their clients' best interests.

20   The Court will not substitute its judgment for that of the parties in this regard. The total

21   settlement appears fair and reasonable.

22   The Court has only very limited information upon which to evaluate the reasonableness

23   of the proposed sharing of the settlement proceeds among the three Plaintiffs.   It is not

24

25   ─────────────────

26   Settlement Monies, 6 N.Y.U. J. L. & Bus. 127 (2009) . However, there is extensive  anecdotal evidence that
     similarly situated  lottery winners quickly and frivolously part with their fortunes. See, Eight Lottery Winners Who
27   Lost Their Millions, MSN Money, http://www.wastedyourtime.com/rub-off/lostwinners.htm.  More importantly here,
     the Court does not believe there is dispute that the average eighteen year old has not reached the peak of his
28   maturity. Certainly most will agree that one that age is more likely to squander his settlement if paid all at once
     than if it is parceled out to him in a way that he can not spend it all at once and can not spend all of it until he has
     matured somewhat.

1  surprising that all three describe significant adverse impact from what happened:  For a period

2  of more than three months, the parents had their child abruptly and unexpectedly taken from

3  them and their home; similarly, the seven year old child suddenly lost his home, his parents

4  and his security for the same period.  The parents were publicly chastised and embarrassed.

5  Reportedly all required counseling or other types of treatment, although no information is

6  provided as to the nature, extent or cost of treatment provided to either of the parents.  There

7  is no summation of the child's medical costs to date.

8       Obviously the child was severely traumatized. According to his treating source (ECF No.

9  100, Ex. C), he suffers from Major Depression and Posttraumatic Stress Disorder.  His

10 symptoms include obsessive traits, hoarding of food, trouble sleeping, nightmares and

11 isolation.  He has undergone approximately 60 treatments to date. His prognosis is "most

12 favorable."  He is expected to need two individual psychotherapy treatments a month for two

13 more years, decreasing to one per month in the latter half of year three, plus other less regular

14 treatments at a projected total cost of $15,060.[2]

15      The parents reportedly incurred legal expenses (aside from those incurred in this case)

16 in order to regain custody of the child plus the expense of past counseling for themselves and

17 the child.  They report they will continue to cover all costs of care and treatment for the child

18 until he reaches majority.  The precise amounts of the various expenses are not provided; all

19 we have is the statement that the total of all such expenses is "over $100,000" and that they

20 have been or will be covered by the parents. (ECF No. 100, p. 8, l.14.)  It is assumed that this

21 "over $100,000" includes the minor's estimated future treatment cost of $15,060. (See ECF

22 No. 100, Ex. C.)

23      More information as to the relative effects of this event on the parents and the child, the

24 nature and extent of treatment for the parents, and descriptions of their ongoing symptoms,

25 if any, would be quite helpful; if, as appears, the child has suffered more than the parents, one

26

27

28
      [2] This evidence is disturbingly inconsistent with the representation in the Petition that other than some possible lingering fear or mistrust of authority figures, the minor appears to have fully recovered from emotional damage.

would expect he would receive greater compensation. If each of them is to be compensated with a gross settlement of $337,146.67, less attorney fees, then arguably an equal amount to the more severely traumatized child under-compensates him.

However, standing alone, a settlement of $337,146.67, less attorney fees, to the child alone is significant and the Court finds it to be consistent with results in similar cases. Moreover, as counsel points out, the parents endured harm–public embarrassment–that the child did not, and they have agreed to shoulder costs and expenses the child has not.  More importantly, both the mother, as guardian ad litem, and the attorneys representing the child had and continue to have fiduciary duties to act in the child's best interests, indeed to put the child's interests above their own.  The Court must assume that such responsibilities were paramount in their determinations as to how to allocate the settlement among the three Plaintiffs.  The Court will not undertake to substitute its judgment for that of the mother of the child or his attorney.

## B.    The Proposed Structure

As noted, the Court previously expressed concern over the proposal to use the minor's settlement funds to purchase a structured annuity with the $182,000 proceeds to be paid over to the minor in full on his 18th birthday in 2018.  The Amended Petition contains a new proposal to pay the proceeds out in eight semi-annual installments beginning at age 18 and continuing until the minor's 22 birthday.  The delay in payment means more interest will accumulate so that the total guaranteed payout will increase from $182,000 to $203,800.

The Court will not intervene to frustrate the proposed settlement despite its belief that such a payout is unwise for the reasons mentioned above. (See Note 1.)  Nevertheless, having the minor's best interests at heart, knowing that the annuity must in any event be renegotiated because the commitment has expired and because this Order will provide for a greater net distribution to the child, the Court very strongly encourages the parents to reconsider and purchase an annuity which will spread the distribution out over a greater period of time and delay payment of  the greatest portion of it until the minor is closer to 25 years of age. Doing so would increase the gross payout substantially and protect the minor from a

1  young adult's often immature judgment. (Similar protections could be obtained by placing the

2  net settlement funds in an insured blocked savings account subject to withdrawal before age

3  25 only for educational purposes and only as approved by this Court. The Court would be

4  receptive to such an alternative proposal if made by the guardian.)

5      **C.**    **Costs and Attorney Fees**

6        The Petition, in effect, seeks approval to reimburse Plaintiffs' attorneys $11,186.66 for

7  costs incurred (1/3 of total costs) and pay $168,573.34 as attorney fees out of the minor's

8  share of the settlement, leaving the minor with a net settlement of $168,573.34.

9        Assuming that the costs top be paid by the minor were not included in the "over

10 $100,000" paid or to be paid by the parents, the Court approves payment of them from the

11 minor's proposed settlement.[3]

12       On the other hand, the Court finds that the proposed payment of attorney fees from the

13 child's share of the settlement would reduce the net settlement to the child to an unacceptable

14 level. Considering the totality of the circumstances discussed herein and reflected in the files

15 in this case and the factors discussed below, a fair and reasonable net settlement in this case

16 must reach a sum in excess of $200,000 before it can be considered to be in the best interests

17 of the minor and approved by this Court.

18       As noted, it is the practice of Eastern District Courts to use 25% of the total recovery

19 as the benchmark for attorney fees for contingency work on behalf of minors. That

20 percentage may be increased based on unusual complexity of the case and/or unusual

21 expenditure of time. See Welch, 2008 WL 3285412 at *2 (50% fee denied and 35% ultimately

22 awarded); Schwall, 2008 WL 552432 at *2 (60% fee request disapproved because not shown

23 to be reasonable in light of the 25% presumption).

24       A 25% rate would result in an $84,286.67 fee and a net award to the minor, after

25 payment of costs and fees, of $252,860, a fair and reasonable net settlement.

26 _____

27    [3] If the "over $100,000" in expenses paid or to be paid by the parents includes the $33,559.99 in legal costs incurred in this action, the parents would in effect be getting credit for paying that full amount even though

28 1/3 of it would be coming from the minor. In that case the Court would need to revisit the proposed allocation among the three Plaintiffs.

1   Plaintiffs' attorneys have gone to some length to justify their request for fees equal to

2   50% of the child's award.  That rate would reduce the minor's net award to $168,573.34. As

3   justification, the complexity of the law in this area and counsels' unique experience in it is

4   emphasized; indeed, it might be said to have been emphasized at the expense of providing

5   the information required by local rule and necessary to the Court's evaluation of the proposed

6   settlement.  Counsel also stress, and the Court recognizes, the risk and delay involved in

7   contingency cases. However, the Court also believes that contingency fees, by their very

8   nature, are designed to compensate for the risk and delay in payment, justifying what might

9   be considered a windfall in one case because some such cases produce no fees.[4]

10   The attorneys also point out that hourly fees charged by those relatively few similarly-

11   situated lawyers range from $400 to $785. At least one court has approved an attorney fee

12   award ranging from $300 to $1000 per hour for representation by these same attorneys in a

13   similar case.

14   This Court accepts the counsels' sworn representations as to their special skills,

15   knowledge and successes in this unique field of law and commends them for the public

16   service benefits of their work. They should be entitled to a fee premium, i.e., a fee greater than

17   the 25% standard contingency fee and greater than the $350 per hour fee many of the very

18   best and most experienced central California litigators charge.[5]  However, it is the Court's duty

19   to ensure the best interests of the minor are protected and to determine the fairness and

20   reasonableness of the proposed settlement.  Since the net settlement is profoundly influenced

21   by the fee allowed, the fee must be evaluated to ensure it leaves the minor with a fair and

22   reasonable settlement.   If it does not, either the settlement must be increased or the fee

23   reduced.

24   As noted above, this district has approved a 35% contingency fee rate.  Given counsels'

25   _____

26   [4] In this case, it appears that a juvenile court judge determined, long before these attorneys became

27   involved in the case, that the child had been unlawfully detained and ordered him returned to his home (ECF No. 75, p.4, ll. 5-8.)  Presumably that reduced the risk undertaken by these attorneys.

28   [5] The Court has some reticence in this regard. As noted, the papers submitted in support of this petition were not reflective of the quality of lawyering one would expect to see from those deserving of such a premium.

unique skills in this unique area, a bonus of 40% might be justified.  That would produce a fee award of $134,858.67 and leave the minor with a net of $202,288. Similarly, doubling of the high-end central California hourly fee from $350 to $700 would provide a very substantial bonus for taking the risk of failure and for counsels' special expertise.  Applying  that rate to the 251.6 hours reportedly spent by Mr. Powell on this case and the 178.74 hours by Mr. McMillan, attorneys with in excess of 18 years experience, plus an average rate of $400 for each of the 141.85 hours spent by attorneys of lesser experience, produces total fees of $357.978.[6]  Since the minor is receiving only one-third of the settlement, he should pay only one-third of the attorney fees incurred in producing it, or $119,326.  That would leave him with a net settlement of $217,820.67. A fee half way between the 40% contingency calculation and the thusly calculated hourly rate would total $127,092 and leave the minor with a net settlement of $210,054.67.  Considering all the factors discussed herein, the Court finds that to be a reasonable net settlement for the child and will approve a settlement distribution which produces a net settlement of $210.054.67, and no less, to the child.

## VI.   **CONCLUSION AND ORDER**

For the reasons stated herein, the Amended Petition for Minor's Compromise is approved insofar as a settlement providing for payment to the minor of the net sum of $210,054.67, after reimbursement by the minor of one third of the $33,559.99 costs incurred and after payment by the minor of the sum of $127,092 for his share of the attorney fees, is a fair and reasonable settlement of the minor P.M.'s claims in this case, provided and subject to the following specific conditions:

A.  The minors' parents' payment of "more than $100,000", as referred to in the moving papers and above, does not include in its reference the $11,186.66 in cost reimbursement provided for here;

B.  The settlement is approved based upon the representation that the minor's parents, Plaintiffs herein, will cover from their share of the settlement or their other funds all expenses

---

[6] Counsel have included time for "Paralegal and Clerks". This Court will not authorize payment of attorney fees for clerical workers.  Since counsel did not distinguish between the two, no award will be made for this category.

1   of the minor child, including the expense of continued therapy and other treatment called for

2   in Exhibit C to ECF No. 100, through the minor's eighteenth birthday.  The parents, Plaintiffs

3   Gracie Darlene McCue and Lawrence McCue, are ORDERED to take no action to withdraw,

4   use, pledge, hypothecate or otherwise dispose of or commit any portion of the minor's

5   settlement funds as provided for herein, or assist the minor in doing so, except upon Order of

6   this Court.

7          C.   The minor's settlement funds provided for herein are to be used to purchase an

8   annuity from Liberty Life Assurance Company of Boston as provided in the Amended Petition

9   and Exhibits B and C thereto and payable as provided therein (i.e., in eight equal semiannual

10  installments beginning on the minor's eighteenth birthday), EXCEPT that the amount used to

11  purchase that annuity will be increased to $210,054 in accordance with the above provisions

12  of this Order.

13         D.   The Court will retain jurisdiction of this matter to ensure compliance with the terms

14  of this Order.

15

16

17  IT IS SO ORDERED.

18  Dated:   July 20, 2012          /s/ *Michael J. Seng*
                                    UNITED STATES MAGISTRATE JUDGE

19

20

21

22

23

24

25

26

27

28